Judgment rendered June 5, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,695-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

PAMELA DUNLAP                                    Plaintiff-Appellant

versus

COMMUNITY BANK OF                                Defendant-Appellee
LOUISIANA

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 83,713

Honorable Amy Burford McCartney, Judge

* * * * *

COLVIN, SMITH, McKAY & BAYS              Counsel for Appellant
By: James Henry Colvin Jr.
    J. Clayton Caraway


THE COHN LAW FIRM, LLC                   Counsel for Appellee
By: David Maxwell Cohn
    Bartley Paul Bourgeois


JOSEPH WILLIAM HENDRIX                    Counsel for Intervenor-
                                         Appellees,
                                         Jason Nash and
                                         The Succession
                                         of Victoria M. Lee

* * * * *

Before ROBINSON, HUNTER, and ELLENDER, JJ.

**HUNTER, J.**

Plaintiff, Pamela Dunlap, appeals a trial court ruling in favor of defendant, Community Bank of Louisiana, finding no cause of action and dismissing plaintiff's lawsuit with prejudice. For the following reasons, we affirm.

## FACTS

On or around November 7, 2003, Mr. Robert Lee (hereinafter "Mr. Lee") opened a traditional money market account with Community Bank of Louisiana (hereinafter "Community Bank").[1] On or around February 1, 2017, Mr. Lee opened what is commonly referred to as a "50 & Free Legacy" checking account with Community Bank.[2] Over the next two years, Mr. Lee opened four certificates of deposit (hereinafter "CDs") at Community Bank. On March 4, 2021, Mr. Lee went to the Community Bank location in Gloster, Louisiana,[3] with one of his three daughters, namely Pamela Dunlap (hereinafter "Ms. Dunlap" or "Plaintiff"), with the alleged intention to donate the aforementioned accounts to her.[4] The following year, Mr. Lee passed away on January 9, 2022.

On January 9, 2023, Ms. Dunlap filed a petition against Community Bank alleging during the March 4, 2021, meeting, Mr. Lee expressed to Community Bank's branch manager, Shelley Elliot (hereinafter "Ms.

---

[1] Mr. Lee had multiple accounts at Community Bank. At issue herein is the money market account ending in 0013.

[2] The "50 & Free Legacy" checking account is the account ending in 8972.

[3] Desoto Parish

[4] Pg. 9 of the first supplemental and amending petition provides: Mr. Lee and his wife, Victoria Lee, each maintained separate accounts in their own names. Upon information and belief, they agreed that each was free to dispose of the money from their separate accounts as they pleased, thus treating the funds as separate property.

Elliot"),[5] his desire to donate the checking accounts to Ms. Dunlap. In the alternative, plaintiff alleged Mr. Lee communicated his desire to execute a Payable on Death (hereinafter "POD") provision, whereby upon his death, the funds in the accounts would be disbursed to Ms. Dunlap.

Ms. Dunlap asserts the balances of the accounts at issue were donated to her "in March of 2021," and she accepted the purported donations. Plaintiff went on to assert if this purported donation was not properly made, and the POD was improperly executed, then Community Bank (a) failed to set up, advise, and/or otherwise ensure Mr. Lee fully and legally donated the sums to Ms. Dunlap, (b) failed to advise Mr. Lee regarding the requirements for setting up a POD account in favor of Ms. Dunlap, (c) failed to properly communicate the appropriate means to accomplish Mr. Lee's desires, and/or (d) failed to ensure Mr. Lee amended account agreements to accomplish the POD status as Mr. Lee directed. According to Ms. Dunlap, Community Bank's negligent misrepresentations to both her and Mr. Lee breached a duty owed to both accounts.

Before serving the original petition, Ms. Dunlap filed her amended petition. In the amended petition, she alleged Mr. Lee, on multiple occasions, verbally expressed to Ms. Elliot his specific desire and intent Community Bank pay the funds of the four CD accounts to Ms. Dunlap upon his death. Ms. Dunlap also alleged Community Bank breached its duty to aid Mr. Lee and/or negligently misrepresented to him the funds in the CDs would be paid to Ms. Dunlap upon his death. Furthermore, she asserted Community Bank's negligent misrepresentations to Mr. Lee and Ms. Dunlap

_____

[5] The record provides two different spellings of the representative's last name (Elliott and Elliot). This opinion will refer to the representative as Ms. Elliot.

2

breached the duty owed to both as the CDs will now be included in at least one succession, rather than Ms. Dunlap being the sole owner/beneficiary of the CDs.

In response to the original petition and the amended petition, Community Bank filed a peremptory exception of no cause of action. After a hearing held on May 4, 2023, the trial court ruled in favor of Community Bank by sustaining the exception of no cause of action. Pursuant to the judgment, Ms. Dunlap filed a second supplemental and restated petition.[6] Again, Community Bank filed an exception of no cause of action. Following a hearing, the trial court sustained the exception and dismissed Ms. Dunlap's lawsuit with prejudice.

Ms. Dunlap appeals.

## STANDARD OF REVIEW

The appellate court standard of review of a judgment sustaining an exception of no cause of action is *de novo. Fluid Disposal Specialties, Inc. v. UniFirst Corp.,* 53,014 (La. App. 2 Cir. 9/25/19), 316 So. 3d 1222, *aff'd on reh'g,* 53,014 (La. App. 2 Cir. 6/3/20), 316 So. 3d 1252. The peremptory

---

[6] Ms. Dunlap stated Ms. Elliot provided account agreements for Mr. Lee and Ms. Dunlap to execute, adding Ms. Dunlap as an additional "account owner" of the two checking accounts. Therefore, Ms. Dunlap became a "customer" of Community Bank, and the funds were now owned by Ms. Dunlap. After Mr. Lee passed away, Ms. Dunlap went to Community Bank where Ms. Elliot filed out deposit slip forms for Ms. Dunlap, and the funds from the checking accounts were transferred to Ms. Dunlap as Mr. Lee intended. Additionally, Ms. Elliot verbally confirmed to Ms. Dunlap Mr. Lee wanted Ms. Dunlap to have both accounts (referring to the two checking accounts and the four CD accounts).

Ms. Dunlap further alleged since the incident transpired, Community Bank has changed its policy regarding the type of account Mr. Lee requested on March 4, 2021. Specifically, Ms. Elliot informed Ms. Dunlap Community Bank now requires the type of account requested by Mr. Lee be designated as a "pay on death" account. Ms. Dunlap claims the balance of all six of the accounts were donated to her and accepted by her in March of 2021. However, Ms. Dunlap was informed the sums may not have been properly donated by Mr. Lee in March of 2021. Thus, Community Bank failed to have Mr. Lee amend the existing account agreements related to the accounts.

exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. *Id.* All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. *Id.* The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Id.* The sufficiency of a petition subject to an exception of no cause of action is a question of law, and a *de novo* standard is applied to the review of legal questions; this court renders a judgment based on the record without deference to the legal conclusions of the lower courts.

La. C.C.P. art. 931 provides: no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.

## DISCUSSION

Ms. Dunlap contends the trial court erred in failing to recognize this Court's ruling in *Succession of McKnight,* 33,802 (La. App. 2 Cir. 10/4/00), 768 So. 2d 794, *writ denied,* 00-3072 (La. 2/9/01), 785 So. 2d 822. Ms. Dunlap argues the facts in her petition are essentially the same facts and essentially the same setting as *McKnight*.

In *McKnight*, a bank customer attempted to make changes to her existing account before her death to name another party as the beneficiary on a "pay on death" account under La. R.S. 6:314(A).[7] After the death of the

---

[7] La. R.S. 6:314(A) provides: Upon the death of a depositor who has deposited a sum in any bank account evidencing an intention that upon the death of the depositor, the funds shall belong to one or more named beneficiaries of the depositor, the bank may pay the deposit, together with the dividends or interest accruing thereto, to the named beneficiaries for whom the deposit was made. The depositor shall give to the depository bank an affidavit in authentic form stating the names of one or more beneficiaries. The

4

bank customer, the beneficiary ultimately filed a lawsuit against the bank, claiming negligence. Specifically, the plaintiff claimed she incurred damages because the bank's negligence in establishing the requested POD account thwarted her status as beneficiary on the account. This court recognized and upheld the pleaded cause of action for negligent misrepresentation, affirming the tort damages against the bank. This Court stated:

> Generally, a bank is not deemed to act as a fiduciary to its customers or to third parties. However, in some instances a party's assumption of a contractual duty may create a corollary tort duty in favor of a third-party person. *Smith v. State Dept. of Public Safety*, 620 So. 2d 1172 (La. App. 1st Cir. 1992). Thus, once Citizen Bank assumed responsibility to instruct the decedent concerning the distribution of the account funds after her death, and in effect agreed to distribute such funds to the plaintiff, the Bank owed a duty of reasonable care in advising decedent as to the method for achieving the intended result in favor of the plaintiff. The trial court was presented with evidence which supported its determination that the decedent's intent was to open a jointly-owned money market account and, upon her death, to disburse the funds in the account to the plaintiff. *Id*. at 798.

According to La. R.S. 6:1124, financial institutions are not fiduciaries of their bank customers or third parties in the absence of specific, written agreement by the financial institution to perform in that capacity.

La. C.C. art. 2315 provides: Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. To prevail on a negligent misrepresentation claim, there must be a legal duty on the part of the defendant to supply correct information; there must be a breach of that duty; and the breach must have caused damages to the plaintiff. *Simmons, Morris & Carroll, LLC v. Cap. One, N.A.,* 49,005 (La.

---

bank may conclusively rely on this affidavit for the disbursal of funds. Upon receiving a death certificate, the bank may disburse funds to the named beneficiaries.

App. 2 Cir. 6/27/14), 144 So. 3d 1207, *writ denied,* 14-1900 (La. 11/14/14), 152 So. 3d 886.

In the present case, both Mr. Lee and Ms. Dunlap had an in-person meeting with Ms. Elliot (Community Bank manager) to make certain requested changes to Mr. Lee's accounts. Mr. Lee and Ms. Dunlap then executed the account agreements provided by the manager. Pursuant to the agreements, Ms. Dunlap was included as an additional owner of the two checking accounts. Ms. Dunlap did not allege, and the record does not establish, Mr. Lee executed any documents which purported to create a POD concerning the disbursement of the account upon death. These facts differ from *McKnight,* where a revised signature card was executed for the account and the area on the signature card designated "Ownership Desired," with the box next to the words "Joint—With Survivorship" were marked.

Furthermore, the record is devoid of an agreement by Community Bank establishing POD accounts. In *McKnight*, the bank took steps to establish a POD account; however, Citizens Bank failed to comply with the decedent's instructions.[8] Contrarily, in the instant case, Community Bank possessed no agreement stating "in the event of the death of one tenant, the balance in the account passes directly to the surviving tenant instead of the estate of the deceased tenant" as stated in *McKnight*. Herein, the record only states Ms. Dunlap was added as an additional "account owner" of the two checking accounts.

---

[8] The plaintiff in *McKnight* was not within the degree of kinship required by the statute to create a valid trust. Consequently, the decedent's transaction with the bank did not form either a valid donation inter vivos or donation mortis causa because it failed to meet the statutory requirements. Thus, the funds in the money market account were declared property of the decedent's estate.

6

The Louisiana Supreme Court opined "a bank and depositor have a debtor-creditor relationship with no independent duty of care imposed on the bank except where a fiduciary relationship is created." *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992). Essentially, without an express, written agreement to the contrary, a bank has no duty to protect its customer "from himself." *Bank One, NA v. Dunn*, 40,718 (La. App. 2 Cir. 4/12/06), 927 So. 2d 645, 648, *writ denied*, 06-1121 (La. 9/22/06), 937 So. 2d 385.

Based on the allegations set forth in her petition, Ms. Dunlap is presumed to own the funds of the two checking accounts, pursuant to La. R.S. 6:317;[9] and Ms. Dunlap released Community Bank when she received funds from the checking accounts according to La. R.S.6:312(A).[10] Although Ms. Dunlap believes her father attempted to donate the funds in the checking accounts to her, as a joint account holder, she had the power to withdraw the funds any time she wished. Community Bank owes no duty to Ms. Dunlap to protect her from herself.[11]

---

[9] Pursuant to La. R.S. 6:317, a bank may conclusively rely on any application, agreement, or signature card used to establish a deposit account as establishing ownership of any and all funds and other credits deposited therein, and may consider and treat any and all funds on deposit in such an account as belonging to and the sole and exclusive property of the depositor or depositors name on the account application, agreement or signature card, unless otherwise notified or directed by such depositor or depositors.

[10] Pursuant to La. R.S. 6:312(A), When a deposit is made in any bank under the names of two or more persons payable to any one of such depositors, that deposit or any part of it or any interest or dividend on it may be paid to any one of such depositors, whether the other depositor or depositors be living or not, and the receipt or acquittance of the person paid is a full release and discharge of the bank as to any heir, legatee, creditor, or other person having rights or claims to funds of such deceased depositor for any payment made; nor shall any bank paying any such depositor in accordance with the provisions of this Section thereby be liable for any estate, inheritance, or succession taxes that may be due this state.

[11] Even if Ms. Elliot created POD accounts for the two checking accounts; Ms. Dunlap will have to account for those funds according to La. R.S. 6:312(A) and La. R.S. 6:314(A) as seen in the intervention in this case.

As to the CDs, Mr. Lee was the sole owner of those accounts and the record does not provide any notarized language within the formality requirement for donation mortis causa.[12] Therefore, we find Ms. Dunlap's petition fails to state a valid cause of action.

Based on our review of the record under the current circumstances, even if the allegations set forth in plaintiff's petition are true, we find a verbal agreement to create POD accounts is not enforceable. Believing no enforceable agreement existed regarding the accounts from Community Bank to Ms. Dunlap, we hold the trial court did not err sustaining the exception of no cause of action.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to plaintiff, Pamela Dunlap.

**AFFIRMED.**

---

[12] A donation mortis causa is an act to take effect at the death of the donor by which he disposes of the whole or a part of his property. La. C.C. art. 1469. A disposition mortis causa may be made only in one of the two forms of testaments authorized by law, olographic and notarial. La. C.C. arts. 1570 and 1574. The formalities for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573.